Robert J. Herrington (SBN CA 234417)
herringtonr@gtlaw.com
Adil M. Khan (SBN CA 254039)
khanad@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800

Attorneys for Defendant Fanatics, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

JAKE CAVANAUGH, on behalf of himself and all others similarly situated,

Plaintiff,

v.

FANATICS, LLC,

Defendant.

CASE NO. 1:22-cv-01085-JLT-SAB

**DEFENDANT FANATICS, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Declaration of Stephanie Flinchbaugh and Proposed Order filed concurrently

Hearing Date: November 8, 2022
Hearing Time: 9:00 a.m.
Courtroom: 4

Judge: Judge Jennifer L. Thurston
Trial Date: TBD

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on November 8, 2022, at 9:00 a.m., in Courtroom 4 of the above-captioned Court, located at 2500 Tulare Street, Fresno, California 93721, Defendant Fanatics, LLC ("Fanatics") will move, and hereby does move, this Court for an order compelling Plaintiff Jake Cavanaugh's claims to arbitration (on an individual basis) and staying this action pending the outcome of arbitration.

Cavanaugh agreed to arbitrate his claims at least seven times when he made transactions on www.fanatics.com ("Website"): once when he created his Fanatics account, and six more times when he bought items through the Website. During each transaction, he was notified that by placing his order or creating his account, he was agreeing to the Website's Terms of Use ("TOU"), which contain an arbitration provision. The TOU were accessible through a hyperlink next to the button he clicked to complete each transaction. By clicking that button at least seven times, Cavanaugh repeatedly and affirmatively accepted the TOU, including the arbitration agreement.

The broad arbitration agreement encompasses all disputes, claims and causes of action arising out of or connected with the Website. All of Cavanaugh's claims are based on the allegation that he was promised free or low-cost shipping for purchases on the Website, but that he was charged a $1.99 handling fee. That theory falls within the arbitration agreement's scope. And under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., the Court should compel arbitration. In addition, the Court should stay this action pending the outcome of arbitration.[1]

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Stephanie Flinchbaugh, all pleadings

---

[1] In the interest of judicial economy and to protect Fanatics' right to arbitration, the Court should also grant the concurrently filed stipulation to modify the case schedule by "stay[ing] the responsive pleading deadline for twenty-one days after a ruling on [this] motion to compel arbitration . . . ." (ECF 10 (Order on Stipulation re Sequencing).) The Court indicated it "is inclined to grant" that request (*id.*), and Cavanaugh and his counsel agree that this sequencing is in the parties' best interests because it would avoid a potentially unnecessary motion under Federal Rule of Civil Procedure 12 (ECF 9 (Stipulation re Sequencing)).

and files, all matters of which this Court may take judicial notice, and upon such other oral or documentary evidence as may be presented to the Court at or before the hearing on this Motion.

The counsel below hereby certifies that meet-and-confer efforts have been exhausted. Counsel for both parties met and conferred via telephone on September 21, 2022, at which time counsel for Fanatics explained the factual and legal basis for Fanatics' Motion, and the parties discussed potential resolutions. The parties could not reach a resolution.

DATED: September 29, 2022 GREENBERG TRAURIG, LLP

By /s/ Robert J. Herrington
Robert J. Herrington
Adil M. Khan
*Attorneys for Defendant Fanatics, LLC*

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION .......... 1

II. FACTUAL ALLEGATIONS AND BACKGROUND .......... 2

- A. Cavanaugh's Claims Arise Out of His Transactions on Fanatics.com. .......... 2
- B. Cavanaugh Assented to the Arbitration Agreement at Least Seven Times. .......... 2
- 1. Cavanaugh Agreed to the Terms of Use When Making Six Purchases on the Fanatics Website. .......... 2
- 2. Cavanaugh Also Agreed to the Terms of Use When Creating His Account. .......... 3
- 3. Cavanaugh Enrolled in the FanCash Loyalty Program. .......... 4
- C. The Terms of Use Contain a Binding Arbitration Provision. .......... 4

III. Argument .......... 6

- A. The Supreme Court Has Held That Courts Must Enforce Arbitration Agreements. .......... 6
- B. Cavanaugh Agreed to Arbitrate His Claims. .......... 7
  - 1. Cavanaugh Agreed To Arbitrate His Claims When He Made The Purchase Alleged In His Complaint. .......... 8
  - 2. Cavanaugh Agreed To Arbitration At Least Five Other Times. .......... 9
  - 3. Cavanaugh Also Agreed to Arbitrate His Claims When He Created His Fanatics Account. .......... 10
- C. Cavanaugh Also Must Arbitrate Based on Estoppel Principles. .......... 10
- D. Any Challenges to Enforceability or Arbitrability Are for the Arbitrator. .......... 12
- E. Cavanaugh's Claims Fall Within the Arbitration Agreement. .......... 13
- F. This Action Should Be Stayed Pending Arbitration. .......... 14

IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ........ 6, 14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........ 6

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 9

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ........ 6, 13

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ........ 12

*Carwile v. Samsung Telecomms. Am., LLC*,
2013 WL 11030374 (C.D. Cal. July 9, 2013) ........ 11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ........ 6, 7

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) ........ 6

*Crawford v. Beachbody, LLC*,
2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ........ 8

*Davis v. Nordstrom, Inc.*,
755 F.3d 1089 (9th Cir. 2014) ........ 7

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ........ 7, 8

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ........ 6

*Esquer v. Educ. Mgmt. Corp.*,
292 F. Supp. 3d 1005 (S.D. Cal. 2017) ........ 13

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) ........ 6, 14

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)....................1, 7

*Henry Schein, Inc., et al. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019)....................7

*Johnson v. Oracle Am., Inc.*,
2017 WL 8793341 (N.D. Cal. Nov. 17, 2017)....................13

*Kilgore v. KeyBank, N.A.*,
673 F.3d 947 (9th Cir. 2012), *reversed and remanded on other grounds*, 718 F.3d 1052 (9th Cir. 2013)....................14

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020)....................8, 9

*Leyva v. Certified Grocers of Cal. Ltd.*,
593 F.2d 857 (9th Cir. 1979)....................14

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................8, 9, 10

*Montoya v. Comcast Corp.*,
2016 U.S. Dist. LEXIS 130806 (E.D. Cal. Sep. 22, 2016)....................11, 12

*Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................6

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013)....................13

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020)....................8

*Pizarro v. QuinStreet, Inc.*,
2022 U.S. Dist. LEXIS 145556 (N.D. Cal. Aug. 15, 2022)....................10

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010), The FAA....................6, 12

*Riley v. Medline Indus.*,
2020 U.S. Dist. LEXIS 186330 (E.D. Cal. Oct. 6, 2020)....................7

*Sauer v. Experian Info. Sols., Inc.*,
2022 WL 2163016 (C.D. Cal. May 12, 2022)....................13

*Smorowski v. Domino's Pizza LLC*,
2021 WL 4440167 (C.D. Cal. July 23, 2021)....................13

*Stiner v. Brookdale Senior Living, Inc.*,
810 F. App'x 531 (9th Cir. 2020) ........ 10

*Tuminello v. Richards*,
504 F. App'x 557 (9th Cir. 2013) ........ 12

*Zenelaj v. Handybook Inc.*,
82 F. Supp. 3d 968 (N.D. Cal. 2015) ........ 13

**California Cases**

*B.D. v. Blizzard Entm't, Inc.*,
76 Cal. App. 5th 931 (2022) ........ 7

*Boucher v. All. Title Co., Inc.*,
127 Cal. App. 4th 262 (2005) ........ 10, 11

*Felisilda v. FCA US LLC*,
53 Cal. App. 5th 486 (2020) ........ 11

*JSM Tuscany, LLC v. Superior Court*,
193 Cal. App. 4th 1222 (2011) ........ 10

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
89 Cal. App. 4th 1042 (2001) ........ 9

**Federal Statutes**

9 U.S.C. § 3 ........ 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Jake Cavanaugh filed a putative class action in California state court alleging that he bought sports apparel on www.fanatics.com ("Website") and supposedly was misled by a $1.99 handling fee, which he agrees was disclosed before completing his transaction. Yet Cavanaugh agreed to arbitrate his claims at least seven times, once when he created his Fanatics account, and six more times when he bought apparel on the Website over two years. The Court should compel Cavanaugh's claims to arbitration for the following reasons and stay this case pending arbitration.

***First***, Fanatics provided conspicuous notice of the Terms of Use ("TOU") for the Website, which Cavanaugh agreed to on at least seven occasions and in at least two ways. To create his account, Cavanaugh clicked the "Create An Account" button, which was paired with the notice that "[b]y signing up, you agree to our Terms of Use & Privacy Policy." The words "Terms of Use" were underlined and hyperlinked to the full TOU. When making each of at least six different purchases, Cavanaugh clicked a "Complete Order" button paired with notice that "[b]y placing an order, you agree to our Terms of Use & Privacy Policy." Courts in the Ninth Circuit and across the country have found that similar checkout and account creation procedures form binding arbitration agreements, and the Court should reach the same conclusion here.

***Second***, Cavanaugh also is bound by the TOU because he repeatedly benefited from and affirmed the parties' agreement, including in this lawsuit. Cavanaugh's complaint alleges breach of contract based on the TOU, which contain the arbitration provision, and he received discounts from the Fanatics reward program (called FanCash) governed by the TOU. For both reasons, Cavanaugh is estopped from disavowing arbitration.

***Third***, all arbitrability questions—including any issues about the scope or enforceability of the arbitration agreement—have been delegated to the arbitrator. Broad arbitration agreements like the one here that refer "any" "disputes" to arbitration and incorporate the American Arbitration Association rules delegate formation and enforceability questions to the arbitrator.

***Finally***, even if this Court were to address the issue of scope, the language of the arbitration

agreement is broad and covers Cavanaugh's claims.

Because Cavanaugh repeatedly agreed to binding arbitration, the Court should grant this motion, compel Cavanaugh to arbitrate his claims, and stay this action.

## II. FACTUAL ALLEGATIONS AND BACKGROUND

### A. Cavanaugh's Claims Arise Out of His Transactions on Fanatics.com.

Cavanaugh alleges he visited the Website and bought branded sports apparel on September 24, 2021. (First Amended Complaint ("FAC") ¶ 36.) Cavanaugh alleges that Fanatics "unfairly obscur[ed] its true shipping costs" when he made his purchase because he "was repeatedly informed that 'Shipping' was FREE," but was still charged a "Handling Fee." (*Id.* ¶¶ 9, 36.) Based on that allegation, Cavanaugh asserts claims: (1) under California's Unfair Competition Law (UCL); (2) under California's Consumer Legal Remedies Act (CLRA); and (3) for breach of contract.

### B. Cavanaugh Assented to the Arbitration Agreement at Least Seven Times.

#### 1. Cavanaugh Agreed to the Terms of Use When Making Six Purchases on the Fanatics Website.

Although the FAC references just one purchase on September 24, 2021, Cavanaugh completed at least six purchases on the Website between September 16, 2021 and April 26, 2022. (Declaration of Stephanie Flinchbaugh ("Flinchbaugh Decl.") ¶¶ 4-6.) During each purchase, Cavanaugh agreed to the TOU for the Website. (*Id.* ¶¶ 8-13.)

As part of each checkout process, Cavanaugh entered and reviewed his purchase request, payment and shipping information. (*Id.* ¶ 9; FAC ¶ 16.) To complete each purchase, he needed to click the "Complete Order" button. (Flinchbaugh Decl. ¶ 10.) Paired with and directly below the "Complete Order" button, Cavanaugh was informed that "[b]y placing an order, you agree to our Terms of Use . . . ." (*Id.* ¶ 11.) As shown in the screenshot below, the words "Terms of Use" were in blue font, underlined, and hyperlinked so that customers could review the TOU before completing the purchase:




*Id.* The TOU includes a mandatory arbitration agreement. (*See id.* ¶¶ 12, 22-23.) Thus, "[b]y placing an order," Cavanaugh "agree[d] to" the Website's TOU, including the arbitration agreement. (*Id.* ¶ 11.)

**2. Cavanaugh Also Agreed to the Terms of Use When Creating His Account.**

Fanatics allows customers to create an account when they use the Website. (*Id.* ¶ 16.) On June 6, 2019, Cavanaugh created an account by entering his name, email address and a password. (*Id.*) He then clicked the "Create An Account" button, as reflected in the following screenshot:



(*Id.*) Paired with and directly below the "Create An Account" button was language informing Cavanaugh that "[b]y signing up, you agree to our Terms of Use . . . ." (*Id.* ¶ 17.) The words "Terms of Use" were underlined and hyperlinked, so that when clicked they open to the full text of the TOU. (*Id.*) Thus, when Cavanaugh created his account, he accepted the Website's TOU. (*See id.* ¶ 19.)

**3. Cavanaugh Enrolled in the FanCash Loyalty Program.**

"FanCash" is an optional loyalty discount program offered to Fanatics customers who have a customer account. (Flinchbaugh Decl. ¶ 7.) The terms governing FanCash accounts, benefits and requirements are in Section 5 of the TOU. (*Id.*, Ex. 3 § 5 (TOU in effect when Cavanaugh created his Fanatics account in June 2019).)[1] As Section 5 explains, customers who make purchases while logged into their accounts earn a 3% FanCash credit on eligible purchases. (*Id.*) That section also explains FanCash policies for returns, reviewing account balances, and how credits can be transferred to expire. (*Id.*). Cavanaugh received FanCash discount benefits and applied FanCash, which resulted in a lesser payment price, to five purchases since September 2021, including the September 24, 2021 transaction alleged in the FAC. (Flinchbaugh Decl. ¶ 7.)

**C. The Terms of Use Contain a Binding Arbitration Provision.**

Since at least September 2018, the TOU have included a mandatory arbitration provision. (Flinchbaugh Decl. ¶¶ 20-23.) The provision has changed slightly over time, but the substantive language relevant to this Motion has remained the same. (*Id.* ¶ 25.) The TOU begins by providing a notice in all capital letters near the top of the page:

> NOTICE REGARDING DISPUTE RESOLUTION. . . . SECTION 22 CONTAINS AN ARBITRATION AGREEMENT AND WAIVER OF CLASS ACTION WHICH STATES THAT WE MUST ARBITRATE INSTEAD OF GOING TO A COURT BEFORE A JUDGE AND JURY AND THAT ALL SUCH ARBITRATION CLAIMS MUST BE BROUGHT IN YOUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS REPRESENTATIVE OR MEMBER OR OTHERWISE ON BEHALF OF OTHERS IN ANY PURPORTED

[1] Other than clarifying some language about the consideration required to obtain FanCash credit, Section 5 of the TOU remained materially unchanged between the version in effect when Cavanaugh created his account and when he made his purchase in 2021 and 2022. (*Compare* Flinchbaugh Decl. ¶ 20, Ex. 3 § 5, *with id.* ¶ 21, Ex. 2 § 5.)

CLASS, COLLECTIVE OR REPRESENTATIVE PROCEEDING.

(*Id.* ¶ 22; Ex. 2 (current TOU in effect when Cavanaugh made the six purchases discussed above); Ex. 3 (TOU in effect when Cavanaugh created his Fanatics account in June 2019).) Section 22 of the TOU, titled "Arbitration; No Class Action," contains a mandatory arbitration provision:

> **PLEASE READ THIS SECTION CAREFULLY. IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT. Use or accessing the Properties or Offers constitutes your acceptance of this Arbitration provision.**
>
> As a condition of using the Properties, you and we agree that any and all disputes, claims and causes of action (collectively, "Claims") arising out of or connected with the Properties (except for small claims court Claims, if applicable) shall be resolved exclusively by binding arbitration under the rules of the American Arbitration Association ("AAA"), including the Supplementary Procedures for Consumer-Related Disputes, for full and final settlement of such Claim applying the Federal Arbitration Act and other federal arbitration laws. YOU UNDERSTAND AND AGREE THAT YOU ARE WAIVING YOUR RIGHT TO SUE OR GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS UNDER THIS CONTRACT. YOU AND WE ALSO AGREE THAT (A) ANY CLAIMS WILL BE RESOLVED INDIVIDUALLY NOT AS A PLAINTIFF OR CLASS REPRESENTATIVE, MEMBER OF OTHERWISE ON BEHALF OF OTHERS IN ANY PURPOSED CLASS, COLLECTIVE, OR REPRESENTATIVE PROCEEDING AND NOT THROUGH ANY CLASS ACTION, (B) IF A CLAIM PROCEEDS IN COURT ANYWAY, WE BOTH WAIVE ANY RIGHT TO A JURY TRIAL; AND (C) EITHER YOU OR WE MAY SEEK A COURT INJUNCTION REGARDING INTELLECTUAL PROPERTY INFRINGEMENT. ARBITRATION DOES NOT INVOLVE A JUDGE OR JURY. Although court review of an arbitration award may be limited, an arbitrator is empowered to award the same damages and relief as a court, including injunctive relief or statutory damages. . . .

(*Id.* ¶ 23; Exs. 2, 3.) The TOU define "We," "Us," and "Our" as Fanatics, Inc. (a predecessor to Defendant Fanatics, LLC) and its affiliates, and define "Properties" as the Website, including the desktop and mobile versions and the Fanatics mobile application. (*Id.*) Thus, when a customer like Cavanaugh makes a purchase or creates an account, he agrees that "any and all disputes, claims and causes of action" against Fanatics or any affiliates that in any way "aris[e] out of or [are] connected with" the Website must be brought exclusively in arbitration. (*Id.*)

## III. ARGUMENT

### A. The Supreme Court Has Held That Courts Must Enforce Arbitration Agreements.

The "liberal federal policy favoring arbitration agreements" under the Federal Arbitration Act (FAA) creates a strong presumption in favor of enforcement, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013). Thus, "courts must 'rigorously enforce' arbitration agreements according to their terms" so as to facilitate streamlined proceedings. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).[2] "Not only did Congress require courts to respect and enforce agreements to arbitrate, it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Epic Sys. Corp.*, 138 S. Ct. at 1621; *see also Rent-A-Center*, 561 U.S. at 67-69 (enforcing delegation provision for arbitrator to decide "gateway" issues "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy").

In deciding a motion to compel arbitration, a court's role is to determine "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citations omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (stating that the FAA "leaves no place for the exercise of discretion by a district court"). "[T]he Supreme Court has recognized that parties can agree to arbitrate "gateway"

---

[2] The FAA governs an agreement to arbitrate where, as here, the economic activity of one of the parties has a nexus to interstate commerce. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57–58 (2003) (holding that neither the parties' agreement nor underlying transaction need be "in" interstate commerce; rather, the *economic activity* of the parties must have some nexus to interstate commerce). The arbitration agreement here relates to a Website operated and maintained by Fanatics, a Florida company, and used by Cavanaugh to make purchases from California.

questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Riley v. Medline Indus.*, 2020 U.S. Dist. LEXIS 186330, at *4 (E.D. Cal. Oct. 6, 2020) (internal quotation marks and citations omitted)); *see also Henry Schein, Inc., et al. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *Chiron Corp.*, 207 F.3d at 1130 (stating that the FAA "leaves no place for the exercise of discretion by a district court").

Cavanaugh is bound by the arbitration agreement, which delegates arbitrability issues to the arbitrator. And even if the Court were to address arbitrability, Cavanaugh's claims fall within the arbitration agreement. Thus, the arbitration agreement must be enforced, and Fanatics' motion should be granted.

**B. Cavanaugh Agreed to Arbitrate His Claims.**

"[O]rdinary state-law principles" govern the formation analysis. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ; *accord Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) ("When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation."). Even for online transactions, formation "is determined under an objective standard applied to . . . the reasonable meaning of [the parties'] words and acts[.]" *B.D. v. Blizzard Entm't, Inc.*, 76 Cal. App. 5th 931, 943 (2022) ("*Blizzard*"); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020) ("The internet has not fundamentally changed the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." (internal quotation marks and citation omitted)).

"[A] manifestation of assent may be inferred from the consumer's actions on the website—including, for example, checking boxes and clicking buttons[.]" *Blizzard*, 76 Cal. App. 5th at 944. "[C]ourts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract, and that there is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will

manifest assent to an agreement." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (applying California law) (citation and quotation omitted).

Courts regularly enforce arbitration agreements formed under circumstances nearly identical those here. *See, e.g.*, *Dohrmann*, 823 F. App'x at 484 (enforcing arbitration agreement where language below "Sign In" button informed users that by signing in, they agreed to the terms); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 582 (N.D. Cal. 2020) ("To complete the process and place an order, they clicked a 'Sign Up' button . . . [] Directly below that button was a statement reading: 'By tapping Sign Up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement'"). For example, in *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020), the court found that the plaintiff assented to terms of use and an arbitration provision when he clicked a "Sign In" button, "where three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use[.]"[3] As shown below, the Website provides even more conspicuous notice than that in *Lee*, as it explains directly below the buttons that placing an order and signing up for an account constitute assent to the TOU, and Cavanaugh assented in both ways.

### 1. Cavanaugh Agreed To Arbitrate His Claims When He Made The Purchase Alleged In His Complaint.

Cavanaugh's claims are based on a September 24, 2021 transaction on the Website, where he alleges he viewed statements about free shipping "on the check-out screen." (FAC, ¶¶ 36-37.) On that same check-out screen, Cavanaugh received conspicuous notice that, by placing his order, he was agreeing to the TOU. (Flinchbaugh Decl. ¶ 11.) Several facts confirm Cavanaugh's assent to the TOU. First, the notice that Cavanaugh was agreeing to the TOU was directly under the "Complete Order" button and within his line of sight when he clicked the button. (*Id.* ¶¶ 11-13.) Second, the text informed Cavanaugh that "by placing an order," he was agreeing to the TOU.

[3] *See also Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *2-3 (S.D. Cal. Nov. 5, 2014) (enforcing terms of website where, at the final step of placing an order, webpage stated that "by clicking Place Order below, you are agreeing" to the website's terms).

(*Id.*) Third, the TOU was called out by underlined, blue font. (*Id.*) And fourth, the phrase "Terms of Use" was hyperlinked, providing direct access to the full terms. (*Id.*) A reasonable consumer "knows that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found." *Meyer*, 868 F.3d at 77–78. The hyperlink was not "buried in fine print." *Berman*, 30 F.4th at 857. It was directly below the button Cavanaugh clicked to place his order (Flinchbaugh Decl. ¶ 11), so he had notice of the TOU.[4] By placing his order, Cavanaugh agreed to the TOU. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022) (explaining that notice must "indicate to the user what action would constitute assent to those terms and conditions").

### 2. Cavanaugh Agreed To Arbitration At Least Five Other Times.

Although the September 24, 2021 purchase is enough to compel arbitration, Cavanaugh's other purchases underscore that he repeatedly agreed to arbitration. Cavanaugh made at least five other purchases on the Website and was told each time that by making those purchases, he was agreeing to the TOU. (*See* Flinchbaugh Decl. ¶¶ 6 (discussing purchases on September 16, 2021; February 27, 2022; March 1, 2022; March 15, 2022; and April 26, 2022), 8-15 (discussing checkout process).) The key facts establishing assent—(i) the placement of the TOU hyperlink directly adjacent to the Complete Order button; (ii) the language of the notice; (iii) the contrasting font color; (iv) the underlining; and (v) the hyperlinking—were all present during these five other purchases. (*Id.* ¶¶ 11-13.) Thus, Cavanaugh agreed to arbitration each time he clicked "Complete Order" after being told that placing an order would mean he was agreeing to the TOU.

---

[4] A person "cannot avoid the terms of [the] contract on the ground that he . . . failed to read it" before communicating assent. *Lee*, 817 F. App'x at 395 (holding that plaintiff was bound to arbitrate even if he declined to read the terms because, for each purchase, he was told that by clicking button and placing order, he was agreeing to the terms of use) (quoting *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001)).

### 3. Cavanaugh Also Agreed to Arbitrate His Claims When He Created His Fanatics Account.

Along with the six purchases, Cavanaugh was notified of the TOU when he created his Fanatics account. (Flinchbaugh Decl. ¶¶ 16-19.) Directly below the "Create An Account" button was a notice informing customers that "[b]y signing up, you agree to our Terms of Use . . . ." (*Id.* ¶¶ 16-17.) The words "Terms of Use" are underlined and hyperlinked, so a user could click to review the full text of the TOU. (*Id.* ¶ 17.) Thus, before he even made a purchase, Cavanaugh assented to the TOU when creating his account. *See Meyer,* 868 F.3d at 78 (finding reasonably conspicuous notice and enforcing arbitration agreement where notice below registration button informed user that creating account would constitute assent to terms).[5]

## C. Cavanaugh Also Must Arbitrate Based on Estoppel Principles.

California has adopted the doctrine of equitable estoppel as a basis to compel arbitration. *See Boucher v. All. Title Co., Inc.*, 127 Cal. App. 4th 262, 268 (2005) (explaining that there are several grounds "pursuant to which an arbitration clause can be enforced," including "estoppel"). Under this doctrine, Cavanaugh must arbitrate because he sued Fanatics for breach of the same contract that requires arbitration, and he knowingly benefited from that contract.

"Under California law, a litigant may not assert claims based on a contract while simultaneously arguing that an arbitration clause in that contract is ineffective.'" *Stiner v. Brookdale Senior Living, Inc.*, 810 F. App'x 531, 534 (9th Cir. 2020) (compelling arbitration of CLRA and UCL claims) (citations omitted); *see also JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1239-40 (2011) ("When a plaintiff brings a claim which *relies on contract terms* against a defendant, the plaintiff may be equitably estopped from repudiating the arbitration

[5] That the hyperlink was not in blue font when Cavanaugh created his account is of no moment, because the overall design of the Website—including the underlining of the hyperlink, the white background, and the close proximity of the hyperlink to the "Create An Account" button—provides reasonably conspicuous notice. *See Pizarro v. QuinStreet, Inc.*, 2022 U.S. Dist. LEXIS 145556, at *8 (N.D. Cal. Aug. 15, 2022) (citing *Berman* and finding that website provided reasonably conspicuous notice of terms even though hyperlink was not in a contrasting color from the rest of the textual notice).

clause contained in that agreement.") (emphasis in original; citations omitted); *Boucher*, 127 Cal. App. 4th at 272 ("The focus is on the nature of the claims asserted . . . . That the claims are cast in tort rather than contract does not avoid the arbitration clause."). But this is exactly what Cavanaugh is trying to do. He alleges he "contracted for sport merchandise shipping services" and that Fanatics breached that contract "by charging an additional $1.99 in excess of the contracted-for 'shipping' charge." (FAC ¶ 76, 78.) The alleged contract and the TOU are the same because the TOU "contain the terms and conditions applicable to [customers] and [their] access to and use of this website, www.fanatics.com . . . ." (Flinchbaugh Decl., Ex. 2 at 1-2; *see also id.* Ex. 3 at 1-2.) The TOU also explain that "use of" the Website "is at all times subject to these Terms of Use" (*id.*), and that "these Terms of Use, together with any additional terms and conditions or policies referred to and incorporated herein (including the Privacy Policy and/or additional terms applicable to various parts of the Properties), constitute the entire understanding between you and us." (Flinchbaugh Decl., Ex. 2 § 24; *see also id.* Ex. 3 § 23.) Because Cavanaugh's contract claim seeks to enforce the parties' agreement, he cannot repudiate the arbitration provision in that agreement. *See*, *e.g.*, *Carwile v. Samsung Telecomms. Am., LLC*, 2013 WL 11030374, at *3 (C.D. Cal. July 9, 2013) (the consumer "may not, after the fact, pick and choose the terms she wishes to be bound by, depending on whether she likes the end result").

Cavanaugh also cannot disavow the arbitration agreement because he already benefited from the TOU — through his use of the FanCash loyalty program to receive discounts on at least five separate purchases, including the purchase singled out in the FAC. (*See* Flinchbaugh Decl. ¶ 7.) "The Ninth Circuit has repeatedly expressed that equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Montoya v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 130806, at *11 (E.D. Cal. Sep. 22, 2016) (internal quotation marks and citation omitted).[6] In *Montoya*, the court held that the

[6] "The application of equitable estoppel principles to arbitrability questions arises in a variety of circumstances. For example . . . : '[a] party may be estopped from asserting that the lack of his [or her] signature on a written contract precludes enforcement of the contract's arbitration clause when he [or she] has consistently maintained that other provisions of the same contract should

plaintiffs were estopped from avoiding arbitration with their cable and internet provider because they used the provider's standard services and "actively . . . ask[ed] for additional security measures when they felt their personal information had been compromised." *Id.* at *8. Based on that conduct, the court held that "by knowingly exploiting the agreement and accepting the benefits of the contract, Plaintiffs cannot avoid the obligations of that contract. . . . Whether or not the Plaintiffs actually read the services contract or arbitration agreement is irrelevant." *Id.* at *5. Cavanaugh similarly exploited and benefited from his contract with Fanatics by repeatedly earning and using FanCash discounts—which reduced the amount of money he had to pay to make the purchases—and those benefits were governed by the same TOU containing the arbitration agreement. (*See* Flinchbaugh Decl., Ex. 3 at pp. 1-2 and § 5.) Thus, Cavanaugh cannot avoid the obligation to arbitrate his claims.

**D. Any Challenges to Enforceability or Arbitrability Are for the Arbitrator.**

As the Supreme Court explained, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *Rent-A-Ctr.*, 561 U.S at 71-73 (requiring the challenge to be directed specifically to the agreement to arbitrate for a court to intervene). Even when the party opposing arbitration challenges the arbitration provision, disputes about scope and enforceability are for the arbitrator when "the parties have demonstrated, clearly and unmistakably that it is their intent to" delegate such questions to the arbitrator. *Rent-A-Ctr.*, 561 U.S. at 79-80.

Here, the arbitration agreement delegates scope and enforceability issues to the arbitrator in two ways. First, the agreement contains broad language that "any and all disputes, claims and causes of action . . . shall be resolved exclusively by binding arbitration." (Flinchbaugh Decl., Ex.

---

be enforced to benefit him [or her].'" *Boucher*, 127 Cal. App. 4th at 268-69 (citations omitted); *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486, 496 (2020) ("'The fundamental point' is that a party is 'not entitled to make use of [a contract containing an arbitration clause] as long as it worked to [his or] her advantage, then attempt to avoid its application in defining the forum in which [his or] her dispute . . . should be resolved.'" (citations omitted)).

2, 3); *see also Tuminello v. Richards*, 504 F. App'x 557, 558 (9th Cir. 2013) (language that "any and all controversies . . . concerning any account(s), transaction, dispute or the construction, performance, or breach of this or any other Agreement" provided "clear and unmistakable evidence that the parties intended the question of arbitrability to be decided in arbitration").

Second, the arbitration agreement specifies that any arbitration will be administered under the rules of the American Arbitration Association. (*See* Flinchbaugh Decl., Ex. 2, 3). Rule 14 of the AAA's Consumer Arbitration Rules on "Jurisdiction" explain that: "(a) The arbitrator shall have the power to rule on his or his own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[7] "Virtually every circuit to have considered the issue" has determined that incorporation of the rules of an arbitral forum constitutes "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability" where the arbitral forum's rules provide that authority to the arbitrator. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases from majority of circuits); *Brennan*, 796 F.3d at 1130-31 (finding incorporation of AAA rules constituted clear and unmistakable intent to delegate arbitrability questions to an arbitrator); *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 974 (N.D. Cal. 2015) (applying *Oracle* to consumer class action); *Johnson v. Oracle Am., Inc.*, 2017 WL 8793341, *7 (N.D. Cal. Nov. 17, 2017) (finding clear and unmistakable delegation by incorporation of JAMS Rules); *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1012-13 (S.D. Cal. 2017) (same).

**E. Cavanaugh's Claims Fall Within the Arbitration Agreement.**

Even if the Court reaches the issues of scope and arbitrability, the arbitration agreement covers all Cavanaugh's claims because they relate to his use of the Website. Courts broadly construe provisions requiring arbitration of "all disputes" "arising" from the parties' dealings, including a plaintiff's use of the defendant's webpage to make purchases. *See*, *e.g.*, *Sauer v. Experian Info. Sols., Inc.*, 2022 WL 2163016, at *1 (C.D. Cal. May 12, 2022) (enforcing arbitration

[7] AAA *Consumer Arbitration Rules*, R-14, available at https://www.adr.org/sites/default/files/Consumer-Rules-Web.pdf.

agreement in terms of use covering disputes and claims "arising out of this Agreement" and "related to the Services or Websites"); *Smorowski v. Domino's Pizza LLC*, 2021 WL 4440167, at *2 (C.D. Cal. July 23, 2021) (enforcing arbitration agreement in website's terms of use covering "ANY CLAIM, DISPUTE, AND/OR CONTROVERSY ARISING OUT OF OR RELATING IN ANY WAY TO YOUR USE OF THE WEB SITES OR THE APPLICATIONS . . . .").[8] The arbitration agreement here covers "any and all disputes, claims and causes of action [] arising out of or connected with" the use of the Website. (Flinchbaugh Decl., Exs. 2, 3.) Cavanaugh's claims about handling fees directly arise from his online purchase through the Website (FAC ¶ 1), so his claims fit within the parties' arbitration agreement and should be compelled to arbitration.[9]

**F. This Action Should Be Stayed Pending Arbitration.**

The FAA provides that "the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . <u>shall</u> on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3 (emphasis added). Under this provision, a "federal case must be stayed while the parties proceed to arbitration." *Kilgore v. KeyBank, N.A.*, 673 F.3d 947, 965 (9th Cir. 2012), *reversed and remanded on other grounds*, 718 F.3d 1052 (9th Cir. 2013). This rule exists because it "would waste judicial resources . . . if the district court . . . were mandated to permit discovery, . . . take evidence and determine the merits of the case at the same time as the arbitrator is going through a substantially parallel process." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). For these reasons, the Court should compel arbitration of Cavanaugh's claims and stay the lawsuit.

---

[8] *See also Ferguson*, 733 F.3d at 938 (recognizing that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" and holding that terms in enrollment agreement requiring arbitration of "any dispute" and "all claims" "arising from my enrollment" covered claims that school misrepresented value and cost of an education (internal quotation marks and citation omitted)).

[9] The TOU and arbitration agreement also contain a class-action waiver, requiring any claims to "be resolved individually." (Flinchbaugh Decl., Exs. 2, 3. ¶ 22) Thus, the Court should compel Cavanaugh to arbitrate on an individual basis. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 237-238 (2013) (arbitration agreements with class action waivers are enforceable).

## IV. CONCLUSION

Cavanaugh repeatedly agreed to arbitration when he assented to the TOU by creating his Fanatics account and making at least six purchases on the Website. Cavanaugh also is bound by principles of equitable estoppel because he reaped the benefits of the contract through his use of FanCash discounts, and he is now suing on that same contract. His claims fall within the scope of the arbitration agreement, and any arguments about scope and arbitrability have been delegated to the arbitrator in any event. Thus, Fanatics requests that the Court grant this Motion, compel Cavanaugh to arbitrate his claims on an individual basis, and stay this action pending arbitration.

Respectfully submitted,

DATED: September 29, 2022 **GREENBERG TRAURIG, LLP**

By /s/ Robert J. Herrington
Robert J. Herrington
Adil M. Khan
*Attorneys for Defendant Fanatics, LLC*